IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JARRETT VICE,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 2:16-cv-771-TMP
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
NANCY A. BERRYHILL,⠀⠀⠀⠀⠀)
Commissioner of Social Security,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

# MEMORANDUM OPINION

## I.⠀⠀Introduction

The plaintiff, Jarrett Vice, appeals from the decision of the Commissioner of

the Social Security Administration ("Commissioner")[1] denying his application for

disability and Disability Insurance Benefits ("DIB"). Mr. Vice timely pursued and

exhausted his administrative remedies, and the decision of the Commissioner is ripe

for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to

---

[1] Counsel for the Commissioner pointed out in her brief that Carolyn W. Colvin is no longer
Acting Commissioner, and that Nancy A. Berryhill is now the Acting Commissioner of Social
Security. The Clerk is DIRECTED to change the style of the case accordingly.

the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c). Accordingly, the court enters this Memorandum Opinion.

Mr. Vice was 42 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school equivalent education and two years of college, but no college degree. (Tr. at 36, 248). His past work experiences include work as a tractor-trailer truck driver and a dump truck driver. (Tr. at 36). Mr. Vice claims that he became disabled on March 14, 2012, due to depression, anxiety, arthritis in the back, bad knees, and high blood pressure. (Tr. at 247).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the

analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If he does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist

which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Vice has not been under a disability within the meaning of the Social Security Act from the date of onset (March 14, 2012) through the date of his decision. (Tr. at 39). He determined that Mr. Vice has not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 22). According to the ALJ, Mr. Vice's obesity; hypertension, benign; history of edema; questionable history for idiopathic scoliosis; questionable history for cervicalgia; osteoarthritis, knees; history of neuropathy, lateral femoral cutaneous; necrotizing fasciitis; lumbago; and mild degenerative joint disease of the thoracic and cervical spine, when considered in combination, may be considered "severe" based on the requirements set forth in the regulations. (Tr. at 22-23). He further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 26). The ALJ did not find Mr. Vice's allegations to be entirely credible. (Tr. at 33). He determined that the plaintiff has the residual functional capacity to perform light work with the following limitations: that he can stand and/or walk one hour without limitation and for a total of at least six hours over the course of an eight-hour

workday; can sit at least two hours without interruption and six hours in an eight-hour workday; cannot climb ladders, ropes, poles, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, and crouch; cannot crawl; can occasionally work in humidity, wetness, and extreme temperatures; can occasionally work in poorly ventilated areas; cannot work at unprotected heights; cannot work with operating hazardous machinery; can occasionally work while exposed to vibration; can frequently operate motor vehicles; cannot perform work activity that requires his response to rapid and/or frequent multiple demands; can respond appropriately to supervision; can frequently interact with coworkers so long as interaction is casual; cannot perform work that requires interaction with the public. (Tr. at 27).

According to the ALJ, Mr. Vice is unable to perform any of his past relevant work, he was a "younger individual" at the date of alleged onset, and he has at least a high school education and is able to communicate in English. (Tr. at 37). He determined that "transferability of skills is not material to the determination of disability" in this case. (Tr. at 37). The ALJ found that Mr. Vice has the residual functional capacity to perform a full range of light work. (Tr. at 37). The ALJ found that there are a significant number of jobs in the national economy that he is capable of performing, such as assembler, cleaner, and non-postal mail clerk. (Tr. at 38).

The ALJ concluded his findings by stating that Plaintiff is "not disabled" under the Social Security Act. (Tr. at 38).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by

substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Mr. Vice alleges that the ALJ's decision should be reversed and remanded because: (1) the ALJ improperly failed to determine that he meets Listing 12.04 and/or 12.06; (2) the ALJ failed to give proper weight to the opinions of treating physicians; (3) the ALJ erred in rejecting two physician statements because they were procured by the claimant's attorney; (4) the ALJ erred in substituting his own opinion for that of the medical examiners; (5) the ALJ improperly evaluated the plaintiff's credibility without retroactively employing Ruling 16-3p relating to the meaning of "credibility"; (6) the ALJ's decision was not based on substantial evidence; (7) the ALJ abused his discretion; and (8) the Appeals Council failed to investigate the plaintiff's claim that the ALJ was of biased against him. (Doc. 13). The Commissioner has responded by addressing these claims in four categories: (1) application of the Listings; (2) the ALJ's treatment of medical opinions and the substantial evidence

requirement; (3) the consideration of plaintiff's subjective complaints as not entirely credible; and (4) the Appeals Council's consideration of the bias claim. (Doc. 16). The court addresses the claims in the broader categories set forth in the Commissioner's brief, but addresses the plaintiff's more specific allegations within the discussions of each category.

### A. Listings 12.04 and 12.06

The plaintiff has alleged that the ALJ erred in failing to find that the plaintiff's impairments met or equaled Listing 12.04 and/or 12.06. The Commissioner has asserted that the plaintiff failed to develop any argument sufficient to explain how the ALJ erred in applying the Listings, and that the ALJ properly evaluated the evidence that plaintiff presented relating to his mental disorders.

Step three of the sequential evaluation process requires that the Commissioner determine whether a claimant meets or equals a disability described in the Listings. *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir.1993). The plaintiff bears the burden of showing that his condition meets or equals a Listing. *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987)(*per curiam*). To carry his burden of showing that his impairment meets a Listing, the plaintiff must manifest all of the specified medical criteria in the Listing. Where a claimant's impairment includes only some of the criteria, it does not qualify as meeting or equaling a Listing, even if severe. *Sullivan*

*v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d). A diagnosis alone, however, is insufficient to establish that a Listing has been met. *Gibbs v. Commissioner*, 2017 WL 1501082 *1 (April 27, 2017), citing 20 C.F.R. § 416.920(d).

Section 12.00 contains the Listings for mental disorders, and includes affective disorders (12.04) and anxiety-related disorders (12.06). 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(A). Listings 12.04 and 12.06 consist of: a statement describing the disorders addressed by the Listing; paragraph A criteria, which are a set of necessary medical findings; and paragraph B criteria, which list impairment-related functional limitations that are incompatible with the claimant's ability to do any gainful activity. In addition, Listings 12.04 and 12.06 also include additional functional criteria, known as paragraph C criteria. A claimant can meet one of these Listings only if "the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." *Id.* § 12.00(A). Stated another way, if is not enough merely to meet the diagnostic description in paragraph A; additional criteria from either paragraphs B or C also must be met.

Plaintiff is asserting that his depression meets Listing 12.04. Paragraph A is met only where there exists "[m]edically documented persistence of" depression that is characterized by at least four defined characteristics. Similarly, the plaintiff asserts that his anxiety meets Listing 12.06, which requires that "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms." The ALJ did not discuss (apparently finding that the plaintiff sufficiently met these requirements) whether the plaintiff had met the Paragraph A criteria of either 12.04 or 12.06, but did address the requirements of Paragraphs B and C.

The paragraph B criteria require a claimant to have at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* §§ 12.04(B), 12.06(B). "Marked" means "more than moderate but less than extreme." Marked restriction occurs when the degree of limitation seriously interferes with a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(C); *see* 20 C.F.R. § 416.920a(c)(4) (describing a five-point scale used to rate the degree of limitation: none, mild, moderate, marked, and extreme). "Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive

functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(4). To meet the criterion of "repeated" episodes of decompensation of "extended duration," a claimant must have three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id.*

In this case, there is no evidence, and plaintiff's counsel does not argue, that the plaintiff experienced any episodes of decompensation. Moreover, the plaintiff's own descriptions of his activities do not support that he has "marked" difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace. He has stated that he drives, plays computer games, shops, mows his grandmother's lawn, and takes care of all of his hygiene needs. He meets with social friends a couple of times a month to "goof off," and has demonstrated sufficient concentration, persistence and pace to work four-hour shifts as a security guard. The only severe panic attack that he described was one time at a Wal-Mart, when he had to go into the restroom until the panic attack passed. The ALJ is not required to make such findings based solely on a medical source statement

that, as discussed *infra*, is not supported by the plaintiff's own testimony and by the medical records.[2]

The paragraph C criteria of Listing 12.04 requires a medically documented history of the alleged mental disorder "of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," as well as one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process resulting in "such marginal adjustment" that it is predicted that "even a minimal increase in mental demands or change in the environment" would cause decompensation; or (3) a current history of at least one year's "inability to function outside a highly supportive living arrangement," with an indication that this arrangement needs to continue. *Id.* § 12.04(C). Listing 12.06(C) requires that the claimant's impairment results in a complete inability to function outside the area of his or her home. *Id.* § 12.06(C).

---

[2] Plaintiff also argues that the severity of his impairments is supported by the findings of Dr. Wilson. (Tr. at 566-71). However, the court notes that Dr. Wilson's psychological evaluation was completed on December 10, 2014, more than two and a half years after the alleged onset date, and more than a year after the date last insured. More significantly, however, is that Dr. Wilson suspected that the test results may indicate "some exaggeration of problems on his part." (Tr. at 570).

In this case, plaintiff's counsel does not appear to argue that the paragraph (C) criteria have been met. The plaintiff does not offer any evidence of repeated episodes of decompensation, or of an inability to function outside of a highly supportive living arrangement or outside of his home. Because the plaintiff has failed to demonstrate that the ALJ improperly applied Listing 12.04 or 12.06, the ALJ's step-three findings do not provide any basis for remand.

## B. Treating Physician and Medical Source Assessments

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997)(internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) . . . was conclusory or inconsistent with the doctor's own medical records."

*Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)(holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. *See also* 20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

The claimant asserts in this case that the Commissioner failed to give proper weight to the opinions of Dr. James McCain, Dr. Marilyn Lachman, Dr. John Schosheim, and social worker Dave Harvey. These opinions are examined in turn.

## 1. Dr. McCain

Dr. McCain opined that Mr. Vice was disabled in a physical capacities form completed on January 6, 2015. Dr. McCain treated Mr. Vice for the first time on May 1, 2013, more than a year after the alleged onset of disability, and he assessed Mr. Vice as having hypertension, which was "stable," and pain in the back and knees, which was "fluctuating" but "relieved by brace/splint and pain/RX meds." (Tr. at 439). A month later—the month of the date last insured—Dr. McCain reported that Mr. Vice had numbness in his left leg that was worsening, but that the pain was "relieved by pain/RX meds" and was "fluctuating" and intermittent. (Tr. at 445). He noted that Mr. Vice was "[n]egative for depression." (*Id.*) The physical exam at that time (June 3, 2013) revealed a "normal range of motion, muscle strength, and stability in all extremities." (Tr. at 447). Dr. McCain further noted that Mr. Vice's lumbar spine was tender, but with only "mildly reduced [range of motion]" and that his right knee was tender with "moderate pain with motion" and the left knee was tender with "mildly reduced [range of motion]." (Tr. at 445-48). June 30, 2013, was the last date on which the Plaintiff was insured under the Social Security framework. Dr. McCain

saw Mr. Vice on July 15, 2013, when he reported more leg numbness and tingling, but was negative for depression and for back pain. He prescribed Baclofen for the neuropathy after Mr. Vice complained of side effects (which were not specified in the record) from the Neurontin.[3] Dr. McCain saw Mr. Vice again in September of 2013, when he complained that he had spent four days with back pain after "twisting oddly" while operating a riding lawnmower. (Tr. at 459). He assessed Mr. Vice's lumbar spine as tender with "moderate pain w/ motion." (Tr. at 461). In October of 2013, Mr. Vice again complained of back pain related to the lawn mower incident. (Tr. at 465).

Nowhere in the records of Mr. Vice's visits to Dr. McCain is there any indication that Mr. Vice needed to spend 4 hours per day with his legs elevated; nor was there any indication that Mr. Vice suffered anything more than moderate pain and some loss of range of motion. Moreover, the records indicate that the back pain Mr. Vice now complains of was caused by an incident that occurred more than a year after the alleged onset date and more than two months after the date Mr. Vice was last insured. Consequently, Dr. McCain's assessment in 2015 that Mr. Vice had to lie

---

[3] The Mayo Clinic website describes Baclofen as a muscle relaxant, and Neurontin as an anti-seizure drug that is often used to treat chronic nerve pain. http://www.mayoclinic.org/drugs-supplements/baclofen-oral-route/description/drg-20067995 ; http://www.mayoclinic.org/diseases-conditions/fibromyalgia/expert-answers/fibromyalgia-treatment/faq-20058273

down or elevate his legs above waist level for four hours per day, and that the condition existed in March of 2012, is wholly unsupported by any of his own treatment records. In addition, the conclusion is internally inconsistent with Dr. McCain's determination that Mr. Vice was able to stand 4 hours per day and sit for 4-5 hours per day. There also is nothing in Dr. McCain's records that supports, or even references in any way, any limitations with social interaction. Accordingly, the ALJ had adequate reasons for giving the physical capacities form signed by Dr. McCain "no weight."

### 2. Dr. Lachman

The plaintiff further argues that the ALJ failed to accord proper weight to the opinion of Dr. Marilyn Lachman, who submitted a one-page mental health source statement on March 23, 2015 (Tr. at 584), more than three years after the alleged onset date. There is no indication in the record that Dr. Lachman ever treated or examined Mr. Vice.[4] Accordingly, the treating physician rule does not apply to her

---

[4]   In plaintiff's brief, the argument relating to Dr. Lachman is contained within the "treating physician" section, but there are no treatment records from Dr. Lachman, there was no testimony at the hearing regarding Dr. Lachman, and there is no evidence otherwise to indicate what, if any, relationship existed between Mr. Vice and Dr. Lachman. As the Commissioner argues, absent some treating relationship, the opinion of Dr. Lachman is not due any special deference, and is treated simply as opinion evidence in accordance with 20 C.F.R. § 404.1527(a)-(c). But even assuming that Dr. Lachman can be regarded as one of plaintiff's treating physicians, her one-page form report is inconsistent with the medical evidence in the record. For example, in an Initial Psychiatric Evaluation performed by the Quality of Life Center on April 11, 2013, claimant's mental status was

opinions.   There also is no indication whether Dr. Lachman ever met with the plaintiff or reviewed his medical records.   Assuming she did review records, there is no indication which medical records she reviewed.

assessed as follows:

> "Sleeping problems exist.
> Patient's appearance is appropriate.
> Patient is oriented to person, place, time and situation.
> Behavior is described as unremarkable.
> Psychomotor behaviors are unremarkable.
> Patient's affect is appropriate.
> Patient's mood is euthymic.
> Memory is intact.
> Sensorium is clear consciousness.
> Patient's intellect is average.
> Attitude is cooperative.
> Attention is gained.
> Patient's self-perception is realistic.
> Thought processes are logical.
> Thought content is unremarkable.
> The patient does not express suicidal ideation.
> The patient does not express homicidal ideation.
> Patient is able to understand and agrees to refrain from harmful action."

Transcript at 432.  Moreover, at a Psychological Evaluation by Dr. David Wilson on December 10, 2014, it was noted that the plaintiff "arrived on time and he drove himself.  He presented neat hygiene and appearance."  (Tr. at 568)  Further, Dr. Wilson noted that his "[t]hought processes were intact.  His speech was clear and normal in rate.  He was cooperative and respectful throughout."  (Tr. at 568-569)  "His affect was within normal limits" and he "denied crying spells or actual suicidal ideation…."  (Tr. at 569).

There was substantial medical evidence for rejecting Dr. Lachman's opinions.

Plaintiff argues that the ALJ rejected Dr. Lachman's opinion because it was procured by an attorney. However, while the ALJ noted that the report of Dr. Lachman was procured by the attorney after the date last insured, he did not reject her opinion as to the claimant's ability to work based on that fact, but based upon the observation that her opinion "is inconsistent with the medical evidence of record." (Tr. at 35). For example, Dr. Lachman opined that Mr. Vice would be unable to "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." (Tr. at 584). There is nothing in any of the submitted records, or even in the plaintiff's own testimony and his own application, that supports this conclusion. Accordingly, there was no error in the ALJ's determination that Dr. Lachman's mental health source statement was entitled to little weight.

### 3. Dr. Schosheim

The ALJ noted that Dr. Schosheim "completed a Medical Interrogatory on the claimant at the request of the claimant's attorney on July 2, 2014." (Tr. at 32). Plaintiff argues that the ALJ improperly rejected his assessment because it was obtained at the request of the attorney.

First, it should be noted that the Interrogatory made part of the record (Tr. at 523-24) is not signed and does not appear to be complete. Even assuming it is a valid interrogatory submitted by Dr. Schosheim, it is no more than a conclusory opinion

that Mr. Vice has "marked" limitations, and it is based on records from the Calhoun Mental Health Board dated April 2009 until August 2010, more than two years before the alleged onset date; records from Dr. Stacy Moore, dated 2012; and records from the social worker (discussed *infra*) dated April 2013 through May 2014, most of which are after the date last insured. Dr. Schosheim opined that Mr. Vice is disabled based upon the plaintiff's obesity, hypertension, "severe" major depressive disorder, anxiety, and agoraphobia. It should be noted, however, that Dr. Moore treated Mr. Vice for hypertension, but never mentioned obesity as a limiting factor, and only once noted that he was "positive" for anxiety and depression, although it was recorded in his past medical history. There is no mention of agoraphobia in those records, and it appears that he was first diagnosed with agoraphobia by a social worker on May 30, 2013, more than a year after his alleged onset date. (Tr. at 44). The ALJ gave Dr. Schosheim's interrogatory "no weight" based on the fact that there are no treating records from Dr. Schosheim, and "nothing" in the record to "suggest marked limitations other than [Mr. Vice's] subjective report." (Tr. at 35). While the ALJ noted that the interrogatory was procured by the plaintiff's attorney, and that Dr. Schosheim is "located in Florida," these observations support the ALJ's conclusion because they reflect the lack of any ongoing treatment or any face-to-face evaluation

of the claimant. The ALJ gave adequate reasons for giving "no weight" to Dr. Schosheim's assessment.

### 4. Dave Harvey, LCSW

Finally, plaintiff asserts that the ALJ "substituted his opinion for that of medical examiners" in giving "little weight" to the opinion of Dave Harvey, a Licensed Clinical Social Worker. The assertion is not supported by any citations to any of Harvey's findings, and is not made the subject of any argument beyond the blanket assertion that an ALJ cannot substitute his judgment for medical experts. (Doc. 13, pp. 31-32).

First, the court notes that a licensed social worker is not an "acceptable medical source" for purposes of establishing whether a Social Security claimant has a medically determinable impairment. 20 C.F.R. § 404.1508(a). Harvey, as a social worker, is considered an "other source." 20 C.F.R. § 404.1508(d). *See McGriff v. Commissioner*, 654 Fed. App'x 469, 472 (11th Cir. 2016)(stating that a social worker's opinion cannot be considered in determining the existence of an impairment because a social worker is not listed as an "acceptable medical source"). Clearly, the ALJ in this case did consider Harvey's treating records, and even apparently considered his statement as a mental health source statement. (Tr. at 583). Accordingly, the

plaintiff's assertion that the ALJ erred by "substituting" his own opinion for that of a "medical source" is without any foundation in law.

Second, even if the ALJ was required to consider Harvey's opinions, there was substantial evidence in the record warranting the ALJ giving these opinions no weight. The plaintiff's own Adult Function Report indicates that he has no problem with hygiene, plays computer games, and communicates on the internet. Likewise, Dr. Wilson's report in 2014 (even after the last-insured date) recorded that the plaintiff described his daily activities this way:

> I am fine around people on the Internet—Teamspeak with a group of people I met years ago—bout games we are playing. He said he has played World of Warcraft "since one of them bought me two months of it." He likes to watch the History channel "and a few TV shows." He has a group of friends he does see--"three real friends and we get together once or twice a month—sit around and goof off—we all play D&D and stuff like that." He listens to music "everything—music is my saving grace." He mentioned Bruce Springsteen because I had a book on him that he saw. He listens to music on Pandora.

(Tr. at 569). There was substantial medical evidence in the record warranting the ALJ's assessment that the social worker's opinions were entitled to no weight.

In sum, the ALJ did not improperly weigh any of the medical evidence put before him, and did not substitute his own opinion for any medical opinions of any

treating or consulting medical professionals.  Rather, the substantive medical evidence, while indicating that the plaintiff has both physical and emotional problems, established that his problems were not so debilitating as to make him disabled by Social Security standards.   Accordingly, the motion to remand is due to be denied.

### C.  Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in finding his subjective complaints "not entirely" credible in that the ALJ failed to retroactively apply SSR 16-3p, which became effective March 28, 2016.  The ALJ applied SSR 97-7p, which was in effect at the time of the claimant's adjudication by the ALJ, but which was superseded by SSR 16-3p.  The new regulation removes the term "credibility" from the policy, and clarifies that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p,  2016 WL 1119029 at *1.

This court has noted before that the Eleventh Circuit Court of Appeals has never held that SSR 16-3p is retroactive.[5]  But, even if it were, the ALJ did not

---

[5]  To date, only the Seventh Circuit Court of Appeals has applied SSR 16-3p retroactively. *Cole v. Colvin*, 2016 WL 3997246 (7th Cir. July 26, 2016).  Other judges within this district have recently rejected the concept that the newly-promulgated rule is applied retroactively.  Judge Virginia E. Hopkins' decision in *Ring v. Berryhill*, 2017 WL 992174 (N.D. Ala. March 15, 2017), is on appeal at the Eleventh Circuit.  Also on appeal is a case in which Judge L. Scott Coogler determined that, given the Supreme Court's determination that retroactivity is not favored, and in the "absence of any binding precedent directing that SSR16-3p is to apply retroactionly," the rule would not be given retroactive application.  *Wood v. Berryhill*, 2017 WL 1196951 (N.D. Ala. Mar. 31, 2017).  Judge Lynwood Smith similarly found that Rule 16-3p is not retroactive, and in any event does not apply

examine Mr. Vice's overall character: he merely examined the descriptions of the plaintiff's activities and the entire record regarding his medical treatment and found that they were not consistent with the plaintiff's allegations regarding disability. The sole case relied upon by the plaintiff, which is non-binding and not from within the Eleventh Circuit, found remand appropriate because the ALJ mounted an attack on the plaintiff's character. *Mendenhall v. Colvin*, 2016 WL 4250214 (C.D. Ill. Aug. 9, 2016). That did not occur here. In this case, the ALJ properly assessed the limitations and symptoms described by Mr. Vice, and determined the outcome in accordance with applicable law, even if that were to include the retroactive application of SSR 16-3p. Accordingly, the motion to remand is due to be denied.

### D. Appeals Council

Finally, the claimant asserts that the Appeals Council failed to consider adequately the argument presented on appeal that the ALJ was biased against Mr. Vice. The only evidence offered in support of this argument was a statistic that showed that ALJ Lassiter, in fiscal year 2014, approved only 15 percent of the cases that came before him, and that other ALJs in Alabama (apparently on average and

---

where the ALJ "adequately articulated" reasons for finding that the "claimant's statements concerning the intensity, persistence, and limiting effects" of his symptoms was "not entirely credible." *Hargess v. Berryhill*, 2017 WL 588608 *2 (N.D. Ala. Feb. 14, 2017). *See also Naler v. Berryhill*, 2017 WL 22774733 *5 (N.D. Ala. June 27, 2017).

apparently in the same fiscal year, although by no means is this made clear) approved 45 percent of their cases. The Commissioner points out that an allegation of generalized bias is irrelevant unless there is some evidence that indicates error in the claimant's particular case. An even more dramatic statistic—that an ALJ granted only 14 to 15 percent of the claims before him, while other ALJs in the state granted 63 percent—was presented in *Barry v. Colvin*, 2014 WL 2991089 (N.D. Fla. July 1, 2014), but the district court denied remand, finding that "nothing in the record… suggests that the ALJ was biased in deciding her disability claim, nor does the Court's review of the record reflect such bias." 2014 WL 2991089 at *9. The court in *Barry* followed the general rule that an ALJ's denial rate is insufficient to establish bias in the absence of other evidence reflecting actual bias on the part of the ALJ. *Id.* Another judge within this district evaluated a similar claim made by the same plaintiff's counsel against the same ALJ, stating:

> Plaintiff alleges that the ALJ is biased against Social Security claimants, as demonstrated by his low percentage of favorable decisions and by his substitution of his own opinion in place of Plaintiff's treating physician, Dr. Archibald. (See Pl.'s Mem. 23). A presumption exists that judicial and quasi-judicial officers such as ALJ's are unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982). This presumption may be overcome by "a showing of a conflict of interest or some other specific reason for disqualification," but the burden for such a showing is on the party asserting such bias. *Id.* at 195-96. The Eighth Circuit and several district courts have held that an ALJ's low approval rate is insufficient in

and of itself to show bias. *See Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011); see also *Barry v. Colvin*, No. 1:13-cv-00089-MP-GRJ, 2014 WL 2991089, at *9 (N.D. Fla. July 1, 2014); *Doan v. Astrue*, No. 04CV2039 DMS (RBB), 2010 WL 1031591 (S.D. Cal. Mar. 19, 2010); *Grant v. Comm'r Soc. Sec.*, 111 F. Supp. 2d 556, 558-89 (M.D. Pa. Aug. 23, 2000). An allegation of general bias is irrelevant if there is no indication of error in a plaintiff's particular case. *Allenstein ex rel. Estate of Small v. Barnhart*, 419 F. Supp. 2d 1336, 1337 (N.D. Ala. 2006) ("Because substantial evidence supports the ALJ's decision, and there is no indication that the record was not properly developed, the decision of the Commissioner must be affirmed.").

While the ALJ's approval rate is significantly below that of other ALJ's in Montgomery, this statistic alone is not enough to overcome the presumption that ALJ Lassiter is unbiased. The court agrees with Plaintiff's citation of the Eleventh Circuit that because of the high standard of review with which this court must view Plaintiff's appeal "[t]he impartiality of the ALJ is thus integral to the integrity of the system." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). However, Plaintiff does not assert sufficient evidence for this court to doubt the impartiality of the ALJ.

*Putnam v. Colvin*, 2016 WL 5253215 *5-6 (N.D. Ala. Sept. 22, 2016)(J. Proctor).

In this case, the Appeals Council did consider the plaintiff's allegation of bias and determined that "[a]fter reviewing the entire record" there was "no abuse of discretion" and that "no other basis exists to grant review in this case." (Tr. at 2). The plaintiff has offered this court no evidence to support an allegation of bias beyond the bare statistic, and this court has determined that the ALJ properly weighed the medical evidence. Accordingly, the Appeals Council properly denied review

because the ALJ's decision was supported by substantial evidence and comports with the statutes and regulations. Therefore, the plaintiff's claim that the Appeals Council improperly denied review is unfounded.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Vice's arguments, the court concludes that the ALJ's determination is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The court further concludes that the Appeals Council properly considered the plaintiff's assertion that the ALJ was biased. The objective medical and other evidence supports the ALJ's conclusion that plaintiff's conditions did not cause disabling limitations and instead shows that he could perform some work.

Accordingly, the Commissioner's decision is due to be and hereby is AFFIRMED and the action is DISMISSED WITH PREJUDICE.

DATED the 29th day of September, 2017.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE